

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

THOMAS H. HUNTER,                          )        Case No. CV 14-02269-JEM
                                           )
                          Plaintiff,       )
                                           )
              v.                           )        MEMORANDUM OPINION AND
                                           )        ORDER REVERSING DECISION OF
CAROLYN W. COLVIN,                         )        THE COMMISSIONER OF SOCIAL
Acting Commissioner of Social Security,    )        SECURITY
                                           )
                          Defendant.       )
_____        )

**PROCEEDINGS**

On March 28, 2014, Thomas H. Hunter ("Plaintiff" or "Claimant") filed a complaint

seeking review of the decision by the Commissioner of Social Security ("Commissioner")

denying Plaintiff's applications for Social Security Disability and Disability Insurance

benefits and for Supplemental Security Income ("SSI") benefits.  The Commissioner filed

an Answer on July 14, 2014.  On October 22, 2014, the parties filed a Joint Stipulation

("JS").  The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this

Magistrate Judge.  After reviewing the pleadings, transcripts, and administrative record

("AR"), the Court concludes that the Commissioner's decision must be reversed and this

case remanded for further proceedings in accordance with this Memorandum Opinion and Order and with law.

## BACKGROUND

Plaintiff Thomas H. Hunter is a 42-year-old male who applied for Social Security Disability and Disability Insurance benefits on November 29, 2011 and Supplemental Security Income benefits on December 12, 2011, alleging disability beginning October 1, 2008. (AR 11.) The ALJ determined that Plaintiff has not engaged in substantial gainful activity since October 1, 2008, the alleged onset date. (AR 13.)

Plaintiff's claims were denied initially on May 31, 2012. (AR 20.) Plaintiff filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Robert S. Eisman on July 18, 2013 (AR 11), in Norwalk, California. Claimant appeared and testified at the hearing and was represented by counsel. (AR 11.) Vocational expert ("VE") Joseph H. Torres also appeared and testified at the hearing. (AR 11.)

The ALJ issued an unfavorable decision on August 1, 2013. (AR 11-21.) The Appeals Council denied review on January 31, 2014. (AR 1-3.)

## DISPUTED ISSUES

As reflected in the Joint Stipulation, Plaintiff only raises the following disputed issue as a ground for reversal and remand:

1.     Whether the ALJ properly considered Thomas Hunter's subjective symptom testimony.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting

Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has established a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging in substantial gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments.  Parra, 481 F.3d at 746.  An impairment is not severe if it does not significantly limit the claimant's ability to work.  Smolen, 80 F.3d at 1290.  Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations.  Parra, 481 F.3d at 746.  If the impairment meets or equals one of the

listed impairments, the claimant is presumptively disabled.  <u>Bowen</u>, 482 U.S. at 141.

Fourth, the ALJ must determine whether the impairment prevents the claimant from

doing past relevant work.  <u>Pinto v. Massanari</u>, 249 F.3d 840, 844-45 (9th Cir. 2001).

Before making the step four determination, the ALJ first must determine the claimant's

residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  The RFC is "the most

[one] can still do despite [his or her] limitations" and represents an assessment "based

on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC

must consider all of the claimant's impairments, including those that are not severe.  20

C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past

relevant work, the ALJ proceeds to the fifth step and must determine whether the

impairment prevents the claimant from performing any other substantial gainful activity.

<u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).  The claimant bears the burden of

proving steps one through four, consistent with the general rule that at all times the

burden is on the claimant to establish his or her entitlement to benefits.  <u>Parra</u>, 481 F.3d

at 746.  Once this prima facie case is established by the claimant, the burden shifts to

the Commissioner to show that the claimant may perform other gainful activity.

<u>Lounsbury v. Barnhart</u>, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a

claimant is not disabled at step five, the Commissioner must provide evidence

demonstrating that other work exists in significant numbers in the national economy that

the claimant can do, given his or her RFC, age, education, and work experience.  20

C.F.R. § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is

disabled and entitled to benefits.  <u>Id.</u>

### THE ALJ DECISION

In this case, the ALJ determined at step one of the sequential process that Plaintiff

has not engaged in substantial gainful activity since October 1, 2008, the alleged onset

date.  (AR 13.)

At step two, the ALJ determined that Plaintiff has the following medically determinable severe impairments: a history of severe left lower extremity lymphedema; left knee degenerative joint disease; morbid obesity; a history of chronic kidney disease and nephrolithiasis, with kidney stones, status post emplacement of a nephrostomy tube with subsequent tube fracture and dislodgment, and left kidney atrophy, resulting in a solitary right kidney and renal insufficiency; and a history of right staghorn calculus, status post percutaneous nephrolithotomy.   (AR 14.)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("listing(s)"), including but not limited to Section 1.02 regarding major dysfunction of a joint, or a Section 6.00 genitourinary impairment. (AR 14.)

The ALJ then found that Plaintiff has the RFC to perform light work as defined in §§ 20 C.F.R. 404.1567(b) and 20 C.F.R. 416.967(c) with the following limitations:

> . . . he can exert up to 20 pounds of force occasionally and/or up to 10 pounds of force frequently and/or a negligible amount of force constantly to move objects.  Claimant can stand and walk up to 2 hours and sit up to 6 hours in an 8-hour workday with normal breaks, provided that standing and walking does not exceed 30 minutes at a time.  After 30 minutes of standing and walking, Claimant would be able to sit for up to 3 minutes, while remaining on task, if the work so lends itself.  He can perform work that does not require climbing ladders, ropes, scaffolds or stairs, or crawling; and no more than occasional climbing of ramps, balancing, stooping, kneeling or crouching.  Claimant can occasionally operate foot controls with his left lower extremities.  He can do work that does not require concentrated or more than frequent exposure to wetness or humidity, and no more than moderate or occasional exposure to hazardous machinery,

5

1    unprotected heights, or other high risk, hazardous or unsafe
2    conditions.
3    (AR 15-18.)  In determining the above RFC, the ALJ made an adverse credibility
4    determination.  (AR 15-16.)

5    At step four, the ALJ found that Plaintiff is capable of performing his past relevant
6    work as a tax preparer, both as generally performed pursuant to the Dictionary of
7    Occupational Titles ("DOT") and as he actually performed it.  (AR 18-20.)  The ALJ also
8    found that, although Claimant is able to perform past relevant work, considering
9    Claimant's age, education, work experience and RFC, there are other jobs in the
10   national economy that he is able to perform, including the jobs of assembler, table
11   work/spotter and sorter/product.  (AR 19-20.)

12   Consequently, the ALJ found that Claimant was not disabled, within the meaning
13   of the Social Security Act.  (AR 20.)

14                                  **DISCUSSION**

15   **I.    THE ALJ'S RFC IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

16   Plaintiff challenges the ALJ's RFC, contending that the ALJ improperly discounted
17   his subjective symptom testimony.  The Court agrees.  The ALJ did not provide specific,
18   clear and convincing reasons supported by substantial evidence for discounting
19   Plaintiff's subjective symptom allegations.  The ALJ decision must be reversed and
20   remanded for further proceedings.

21         **A.    Relevant Federal Law**

22   The ALJ's RFC is not a medical determination but an administrative finding or
23   legal decision reserved to the Commissioner based on consideration of all the relevant
24   evidence, including medical evidence, lay witnesses, and subjective symptoms.  See
25   SSR 96-5p; 20 C.F.R. § 1527(e).  In determining a claimant's RFC, an ALJ must
26   consider all relevant evidence in the record, including medical records, lay evidence, and
27   the effects of symptoms, including pain reasonably attributable to the medical condition.
28   Robbins, 446 F.3d at 883.

1      The test for deciding whether to accept a claimant's subjective symptom testimony
2 turns on whether the claimant produces medical evidence of an impairment that
3 reasonably could be expected to produce the pain or other symptoms alleged.  Bunnell
4 v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715,
5 722 (9th Cir. 1998); Smolen, 80 F.3d at 1281-82 esp. n.2.  The Commissioner may not
6 discredit a claimant's testimony on the severity of symptoms merely because they are
7 unsupported by objective medical evidence.  Reddick, 157 F.3d at 722; Bunnell, 947
8 F.2d at 343, 345.  If the ALJ finds the claimant's pain testimony not credible, the ALJ
9 "must specifically make findings which support this conclusion."  Bunnell, 947 F.2d at
10 345.  The ALJ must set forth "findings sufficiently specific to permit the court to conclude
11 that the ALJ did not arbitrarily discredit claimant's testimony."  Thomas, 278 F.3d at 958;
12 see also Rollins, 261 F.3d at 856-57; Bunnell, 947 F.2d at 345-46.  Unless there is
13 evidence of malingering, the ALJ can reject the claimant's testimony about the severity
14 of a claimant's symptoms only by offering "specific, clear and convincing reasons for
15 doing so."  Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at 722.  The ALJ
16 must identify what testimony is not credible and what evidence discredits the testimony.
17 Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

18      **B.   Analysis**

19      The ALJ found that Plaintiff has the medically severe impairments of chronic
20 kidney disease and nephrolithiasis, huge lower left leg lymphedema, left knee
21 degenerative joint disease and morbid obesity.  (AR 14, 165, 359-360.)  The ALJ also
22 found that Plaintiff has the nonsevere medical impairments of hypertension, anemia and
23 lumbar spine degenerative disc disease.  (AR 14.)

24      Plaintiff is 5 foot 4 and weighs over 400 pounds.  (AR 17, 168)  He only has one
25 working kidney (AR 16) and has undergone multiple surgeries for kidney stones and
26 experienced frequent problems with the placement of a nephrostomy tube.  (AR 17-18,
27 837.)  He has an enlarged right kidney (AR 355) but no urgent need for hemodialysis.
28 (AR 16, 260.)  He also suffers from left leg lymphedema with severe right flank pain.

(AR 355.)  His left leg is three or four times the size of his right leg and he has trouble putting on his left shoe.  (AR 52.)  There is almost no movement of his left ankle and minimal movement of his left knee.  (AR 73, 85, 359.)  He alleges severe pain in his left leg.  (AR 165.)  In 2012, the consulting internist, Dr. Rocelyn Ella-Tamayo, noted that Plaintiff's left leg is very heavy and constantly painful and Plaintiff has difficulty standing and moving.  (AR 356.)  He also has severe osteoarthritis in his left knee.  (AR 14, 17.)  Plaintiff takes numerous medications, including tramadol for pain in his left leg, accupril for hypertension, tamosulosin, furosemide, ibuprofen and Vitamin D.  (AR 39-40, 50.)  Plaintiff complains of physical exhaustion and drowsiness, and medication side effects of nausea and dizziness.  (AR 51, 187.)

Despite these multiple impairments and limitations, the ALJ assessed Plaintiff with a less than light work RFC (essentially a sedentary RFC) with numerous postural and environmental limitations.  (AR 14, 15.)  The ALJ bases his RFC on the assessments of the consulting internist Dr. Ella-Tamayo (AR 16, 355-360) and a State agency medical consultant, Dr. C. Friedman.  (AR 17, 72-78, 85-90.)  The ALJ found that "the medical and subjective evidence support the residual functional capacity adopted above" (AR 18), thus rejecting any evidence or symptoms inconsistent with the ALJ's RFC.  Based on the ALJ's RFC, the VE found that Plaintiff could perform both past relevant work and alternative work in the national economy.  (AR 18-20.)

The ALJ discounted Plaintiff's credibility for a number of reasons.  Because the ALJ did not make a finding of malingering, he was required to provide specific, clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom allegations.  Smolen, 80 F.3d at 1283-84.  The ALJ failed to do so.

1.    The Medical Evidence

As already noted, the ALJ determined that the medical evidence supports the RFC he assessed.  (AR 18.)  An ALJ is entitled to consider whether there is a lack of medical evidence to corroborate a claimant's alleged pain symptoms so long as it is not the only reason for discounting a claimant's credibility.  Burch v. Barnhart, 400 F.3d 676, 680-81

(9th Cir. 2005).  Here, the medical evidence supporting the ALJ's RFC is dated, insufficient and not fully developed enough to warrant a conclusion that Plaintiff's subjective symptoms are inconsistent with the medical evidence or that the medical evidence supports the ALJ's RFC.  Consequently, the case must be remanded for further proceedings.

Although the ALJ's less than light work RFC is based on the medical source opinions of Dr. Ella-Tamayo and Dr. Friedman, both of those opinions leave an important consideration unaddressed, namely the number of days Plaintiff reasonably could be expected to miss work from his significant, ongoing recurrent impairments.  The record is 958 pages long and indicates multiple severe and nonsevere impairments, frequent surgeries, trips to the emergency room and visits to clinics and hospitals.  Dr. Ella-Tamayo's April 20, 2012 evaluation documents hospitalizations in 2011 and 2012 and notes "frequent" kidney infection.  (AR 355-356.)  She also notes Plaintiff has been on "frequent" antibiotic therapy for constant right flank pain.  (AR 356.)  Medical records indicate Plaintiff has received hydrocodone and vicodin.  (AR 330, 333.)  Dr. Ella-Tamayo diagnosed "[r]ecurrent right kidney and urinary tract infection on nephrostomy." (AR 360.)  (Emphasis added.)  Similarly, Dr. Friedman, finding Claimant's allegations "credible," found "frequent" kidney infection and right flank pain.  (AR 73, 85.)  A March 14, 2013 treatment note of Presbyterian Intercommunity Hospital ("PIH") describes Plaintiff's history as one characterized by multiple episodes of urolithiasis and multiple fractures in the lower left leg.  (AR 837.)  The ALJ opinion itself reflects the recurrent nature of Plaintiff's kidney impairment.  The ALJ found that Plaintiff's history of kidney impairment has included multiple instances of kidney stones and their removal and frequent problems with the placement of a nephrostomy tube, which has either fractured or dislodged on several occasions, requiring numerous replacements.  (AR 17, 18.)  The ALJ also found that Plaintiff had several surgeries to remove right side kidney stones. (AR 18.)  These recurrent episodes of kidney infection and kidney stones are accompanied by dizziness, nausea and vomiting.  (AR 239-241.)

9

The frequency of medical attention to Plaintiff's multiple severe and nonsevere impairments no doubt would have resulted in significant time away from work since the alleged onset date, had Plaintiff been employed.  Typically, medical RFC assessments contain a question asking for an assessment of how many days Plaintiff could be expected to miss from work going forward.  There were no such assessments here. Given the extensive medical treatment history and likely need for continued medical attention in the future, the ALJ erred in not obtaining such an assessment.  It does not do to say that Plaintiff's abdominal pain from his kidney impairment has been "off-and-on in nature" or "intermittent" (AR 17, 18) because when it is "on" Plaintiff surely has been in severe pain and would miss work to obtain medical attention, including hospitalization. For example, as noted in a March 13, 2013 treatment record of PIH Hospital only months before the hearing, Plaintiff was hospitalized with a sudden onset of abdominal pain, grade 9 out of 10, described as sharp and constant, in his right flank, similar to previous episodes of urolithiasis.  (AR 841.)  Plaintiff's severe stage IV chronic kidney disease is stable "at the moment" (AR 838) but the disease is chronic and pain can reoccur as it did in March 2013.  By acknowledging the "intermittent" nature of Plaintiff's chronic kidney disease, the ALJ is implicitly conceding that future, ongoing medical attention can be expected.  The ALJ's concession also suggests that Plaintiff can be expected to lose time from work in the future.

Nor does it do to say that Plaintiff's lymphedema was "stable" in December 2011. (AR 17.)  A PIH treatment note dated March 14, 2013 states that Plaintiff's "chronic" lymphedema has become progressively worse since 2008, associated with pain on standing and with limited ambulation.  (AR 838-839.)  Dr. Ella-Tamayo noted that Claimant "had rapidly enlarging left leg lymphedema for the past 4 years."  (AR 356.) The March 14, 2013 PIH note also indicates Plaintiff will undergo a surgical procedure for deep vein thrombosis.  (AR 839.)  At the very least, the above evidence suggests continuing medical attention will be required for Plaintiff's lymphedema with attendant loss of work.  Again, the ALJ erred in not obtaining an assessment of how much work

1  Plaintiff would be expected to miss because of "chronic," apparently worsening

2  lymphedema and other left leg impairments.

3         There is medical evidence in the record that, despite his pain, Plaintiff can stand

4  and walk for 30 minutes up to a total of 2 hours, and sit for 6 hours a day.  (AR 17.)

5  These were the assessments of Dr. Ella-Tamayo and Dr. Friedman adopted by the ALJ

6  in his RFC.  (AR 16, 17, 72-80, 85-90, 355-60.)  These assessments, however, occurred

7  in 2012 and could not have considered Plaintiff's more recent medical records regarding

8  his March 14, 2013 hospitalization for nephrolithiasis or anticipated surgery for deep vein

9  thrombosis.  Nor do they consider Plaintiff's testimony at the hearing that bears on his

10 ability to sustain gainful work activity for 8 hours a day 5 days a week.  SSR 96-8p;

11 Reddick, 157 F.3d at 724.  At the hearing, Mr. Hunter testified that, to relieve his leg

12 pain, he elevates his leg five or six times a day (AR 50) and also utilizes a cold wrap.

13 (AR 51.)  He further indicated that he lies down one or two times a day due to physical

14 exhaustion which makes him sleepy.  (AR 51.)  In his Pain Questionnaire, he indicated

15 he needs to rest from time to time when performing light activity such as chores.  (AR

16 187-188.)  There is some evidence in the medical record to support his testimony of

17 fatigue on exertion.  A PIH note dated December 26, 2011 states, "The patient does

18 experience dyspnea (impaired breathing) on exertion with activity."  (AR 330.)

19         The ALJ did not have a medical expert at the July 18, 2013 hearing to evaluate

20 Plaintiff's testimony or to consider recent medical evidence regarding Plaintiff's March

21 13, 2013 hospitalization for neophrolithiasis or his left leg impairment and anticipated

22 surgery for deep vein thrombosis.  Dr. Ella-Tamayo's evaluation was dated April 20,

23 2012 and Dr. Friedman's note bears a date of May 29, 2012.  Their assessments

24 obviously could not have considered Plaintiff's subsequent medical history or Plaintiff's

25 testimony at the hearing.  The ALJ did not question Plaintiff at the hearing about his

26 testimony regarding fatigue and drowsiness on exertion.  The ALJ decision does not

27 mention Plaintiff's testimony at the hearing regarding elevating his leg, lying down, and

28 fatigue and drowsiness on exertion.  The Commissioner does not mention it in the Joint

1    Stipulation even though Plaintiff raised it there.  Plaintiff's unrebutted statements that he

2    elevated his leg six times a day, and lies down once or twice a day because of

3    exhaustion and drowsiness obviously bear on whether he can sustain competitive work

4    activity 8 hours a day, 5 days a week.  The ALJ's finding that there is "no evidence either

5    the Claimant's left lower extremity lymphedema or his left knee degenerative joint

6    disease warrant additional functional limitations" (AR 17) is not supported by substantial

7    evidence.  The ALJ's RFC limitations are based on dated evidence from medical

8    sources who did not consider more recent medical treatment or Plaintiff's hearing

9    testimony about his exhaustion and drowsiness.

10        Thus, the record here is not fully developed as to how much work Plaintiff would

11   miss and whether he can work a full work week.  In Social Security cases, the ALJ has a

12   special, independent duty to develop the record fully and fairly to assure that the

13   claimant's interests are considered.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir.

14   2001); Smolen, 80 F.3d at 1288.  The ALJ has a basic duty to inform himself about facts

15   relevant to this decision.  Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (J.

16   Brennan, concurring).  Ambiguous evidence triggers the ALJ's duty to conduct an

17   appropriate inquiry.  Smolen, 80 F.3d at 1288; Tonapetyan, 242 F.3d at 1150.  As noted,

18   the evidence of how much work Plaintiff would miss or whether he can work a full work

19   week is ambiguous.

20        Another deficiency in the ALJ's opinion is that the ALJ addressed the severity of

21   each severe and nonsevere impairment in singular fashion.  An ALJ, however, must

22   consider the combined effect of all of a claimant's impairments on his or her ability to

23   function "without regard to whether each alone was sufficiently severe."  Smolen, 80

24   F.3d at 1290.  Here, the ALJ admits that Claimant's obesity contributes to his functional

25   limitations but then finds it does not warrant additional functional limitations beyond the

26   ALJ's RFC.  (AR 17.)  The Commissioner's logic is reversed.  A claimant's severe and

27   nonsevere impairments and the limitations they cause should in combination determine

28   a claimant's RFC.  It is error to apply an already determined RFC to dismiss an

impairment, particularly in a way that fails to consider how claimant's obesity operates <u>in</u> <u>combination</u> with his left leg lymphedema, left knee degenerative joint disease and lumbar spine degenerative disc disease to limit his mobility and cause physical exhaustion on exertion.

The medical evidence on which the ALJ bases his RFC is dated, does not account for more recent medical treatment or Plaintiff's hearing testimony on exhaustion and drowsiness and does not address satisfactorily how much Plaintiff would miss from work and whether he can work a full work week.  As a result, the medical evidence is insufficient to warrant the conclusion that Plaintiff's alleged subjective symptoms are inconsistent with it.  The medical evidence does not constitute a clear and convincing reason for discounting Plaintiff's credibility.

2.   <u>The ALJ's Other Reasons For</u>
     <u>Discounting Plaintiff's Credibility</u>

The ALJ advanced other reasons for discounting Plaintiff's credibility.  These reasons include: drinking heavily around the time of the alleged onset date, travel before the alleged onset date and no dialysis.  (AR 16.)  The Commissioner has chosen not to defend these findings which are not mentioned in the Commissioner's portion of the Joint Stipulation.  The Court treats the Commissioner's silence as an admission that these findings do not constitute clear and convincing reasons for discounting Plaintiff's credibility.

The ALJ, however, offers three reasons for discounting Plaintiff's credibility that are defended by the Commissioner.  First, observing that Plaintiff was using a cane at the hearing, the ALJ noted that Mr. Hunter did not have a medical prescription for an assistive device.  (AR 15.)  The ALJ reasoned that the fact that Plaintiff does not have a medically prescribed cane indicates that his difficulty with standing and walking is not as significant as alleged and thus lessens his credibility.  (AR 15-16.)  Dr. Ella-Tamayo found Plaintiff to have a normal gait and found Plaintiff capable of standing and walking for 30 minutes at a time up to a total of 2 hours in an 8 hour day.  (AR 359, 360.)  So did

1   Dr. Friedman.  (AR 73, 85.)  As already noted, however, the RFC limitation of 2 hours

2   walking and standing does not necessarily mean Plaintiff can sustain full-time

3   employment 8 hours a day, 5 days a week.  This limitation does not take into account

4   Plaintiff's fatigue and drowsiness after activity and thus is insufficient to discount

5   Plaintiff's credibility.

6          Second, the ALJ also cites daily activities inconsistent with allegations of disabling

7   pain and symptoms.  (AR 16.)  The ALJ noted that Claimant performs light activity such

8   as cooking, laundry, doing dishes and assisting with housekeeping.  (AR 16, 47-48.)

9   The ALJ's opinion is selective in presenting the facts of record which also indicate

10  Plaintiff has to stop these activities at least once a day due to pain, he needs assistance

11  with errands and must rest from time to time when doing chores.  (AR 188.)  The

12  activities cited, after considering the entire record, do not establish that Plaintiff can

13  sustain work activity 8 hours a day, 5 days a week and do not constitute a clear and

14  convincing reason for discounting Plaintiff's credibility.

15         Third, the ALJ's next reason for discounting Plaintiff's credibility is that in October

16  2011 the Claimant signed out of a hospital against medical advice which "does not

17  enhance his credibility."  (AR 16.)  Claimant presented at the hospital with "heart-burn

18  like" chest pains unrelated to exertional activity and was free of any chest pain at the

19  time of evaluation.  (AR 313.)  Claimant refused cardiac testing and signed out against

20  medical advice.  (AR 314-315.)  The ALJ did not find that Plaintiff had any severe or

21  nonsevere cardiac impairment and Plaintiff does not allege a cardiac condition or chest

22  pain in his disability claim.  The isolated October 2011 incident is unrelated to Claimant's

23  kidney and lymphedema impairments.  The incident does not constitute a clear and

24  convincing reason for discounting Claimant's credibility as to those impairments.

25                                            *  *  *

26         The ALJ has not provided clear and convincing reasons supported by substantial

27  evidence for discounting Plaintiff's credibility.  The ALJ's RFC is not supported by

28

1   substantial evidence.  The ALJ decision is reversed and remanded for further

2   proceedings in accordance with this Memorandum Opinion and Order and with law.

3                                                    **ORDER**

4        IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the

5   Commissioner of Social Security and remanding this case for further proceedings in

6   accordance with this Memorandum Opinion and Order and with law.

7

8   DATED: <u>November 10, 2014</u>                    <u>      */s/ John E. McDermott*      </u>
                                                          JOHN E. MCDERMOTT
9                                                         UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28